### Williams v. Commonwealth.

(Decided May 21, 1929.)

LEEBERN ALLEN and E. B. ARNETT for appellant.

J. W. CAMMACK, Attorney General (DOUGLAS C. VEST, of counsel), for appellee.

Opinion of the Court by Judge Clay—Affirming.

Morris Williams was convicted of malicious shooting and wounding with intent to kill, and his punishment fixed at imprisonment for two years. He appeals.

According to the evidence for the commonwealth, the shooting took place near the home of Earn Salyer on Oakley creek in Magoffin county about 11 o'clock at night. Fred Howard, the prosecuting witness, had been at the home of Roll Salyer. There were present there Floyd Carpenter, Earn Salyer, and Roll Salyer. After remaining there about 15 minutes, he and Gracie Salyer started up the road to Earn Salyer's. While walking up the railroad he saw some one going toward the track. When about 20 feet away he saw appellant standing with his pistol on him. When appellant raised his pistol Gracie jumped over on the side of the track. Appellant

fired the first shot and hit him in the breast. At the time he did not have a pistol in his hand. When the shot struck him he threw his hands to his breast. Appellant then fired a second shot. After appellant fired the second shot, he (witness) got his gun and fired four shots. Appellant then started to run and fired three shots over his shoulder. He had not said anything to appellant or attempted to do anything to him prior to the time that appellant began firing. The bullet did not come out, but lodged in his body. The bullet weakened him, and he was carried to the Paintsville hospital, where he was treated for about 8 days. While there an X-ray picture was taken. Gracie Salyer's evidence was substantially the same as that of Howard. She further stated that after the first shot was fired she went into the house, and at the time he was shot Howard did not have a pistol in his hand. Mrs. Earn Salyer, another witness for the commonwealth, testified that at the time of the shooting she was standing in the door and saw appellant shoot Howard. Gracie Salyer was with him, and she did not see any pistol in Howard's hand. Fred Howard was not doing anything at the time.

On the other hand, appellant testified that he saw two people, a man and a woman, coming about 25 feet away. When they got a little nearer, Howard tore loose from Gracie Salyer and jumped off the railroad. She grabbed him by the arm and said, "Don't do that." Howard then jerked loose, and Gracie Salyer ran in the house and jerked Lawrence Salyer inside the door. Howard then walked about three steps toward him and fired two shots, which came near knocking him down. He then fired five shots, and it was over in a second. At the time he did not know whom he was shooting at, but thought it was Floyd Carpenter. He shot in order to save his life. Grace Salyer was in the house at the time when the first shot was fired. After the shooting he went about 100 yards above Earn Salyer's house. He afterwards learned that somebody had been shot. He had started home and did not think about having any trouble, and would not have had it if it had not been forced on him. Lawrence Salyer, a boy about 15 years of age, testified that just before the shooting he saw Fred and Grace walking down the road. Appellant stepped out and said he was going home. When he reached the railroad Grace and Fred came up. Grace said, "Lord have mercy, don't

do that.'' She then jerked witness in the house and the shooting began. Grace was in the house while the shooting was going on. Fred Cole testified that he was sitting in the house. The first he heard was Gracie halloo, ''Don't do that.'' She was near the door when the shooting began, and jerked Lawrence Salyer in the door. The door was closed and the shooting was soon over with. She was not in the house when the first shot was fired, but was near the door on the outside and was coming in.

It is suggested in brief that appellant had no motive for shooting Howard, but thought that he was shooting at Floyd Carpenter. This is wholly immaterial. One who shoots and wounds another, even though mistaken as to his identity, is nevertheless guilty unless he acts in self-defense. The weight of the evidence was to the effect that appellant fired the first shot and wounded Howard when Howard had not said anything or attempted in any way to injure appellant. In the circumstances the question whether appellant maliciously shot and wounded Howard with intent to kill him, or shot and wounded him in sudden affray or in sudden heat and passion without malice, or shot and wounded him in his necessary or apparently necessary self-defense, was clearly for the jury. Complaint is made of the fact that the clothing worn by the prosecuting witness at the time he was shot was admitted in evidence over appellant's objection. It is true that the introduction of the clothing was altogether unnecessary, but as the prosecuting witness not only exhibited his wound to the jury, but testified that the clothing was the same worn by him at the time of the difficulty, it is not perceived how its introduction was in any way prejudicial to appellant.

Over the objection of appellant, the prosecuting witness was permitted to answer, ''Yes,'' to each of the following questions: ''Were you treated by a physician, or taken anywhere after the shooting?'' ''Was an X-ray picture made?'' ''Does this wound that you received still have any effect on you?'' The basis of the complaint is that the questions were leading. The evidence had a direct bearing on the character and extent of the injury inflicted on the prosecuting witness, and was therefore admissible. Rarely, if ever, will a case be reversed because of leading questions. Certainly, no reversal should be ordered where, as here, the departure from the rule against leading questions was so slight and unimportant.

584

While Gracie Salyer, witness for the Commonwealth, was under cross-examination, the court refused to permit her to answer the following question: "What were you doing out at that time of night?" Thereupon appellant made the following avowal: "The witness if permitted to answer would answer the following: 'We had been up to Tip Top that night and we came back and Earn Salyer and his wife was with me and they told me that Fred Howard and Elliott Salyer was at Roll Salyer's and I went down.' " The only real question in this case was: Who was the aggressor at the time of the difficulty, appellant or the prosecuting witness? If the witness had been permitted to answer in the language of the avowal, it would have thrown no light on this question. The fact that she had been up to Tip Top with Earn Salyer and his wife, or that they told her that Fred Howard and Elliott Salyer were at Roll Salyer's was wholly immaterial and irrelevant. In the circumstances the court did nor err in excluding the answer.

Lastly, it is insisted that instruction No. 1 did not authorize the punishment inflicted. It concludes as follows: "Then the jury should find defendant guilty as charged in the indictment, and fix his punishment at not less than one nor more than five years." As the instruction fixed the minimum and maximum punishment, the only criticism of which it is susceptible is that it omitted the words "in the penitentiary." As the punishment for malicious wounding with intent to kill is from one to five years in the penitentiary, and the jury fixed appellant's punishment within those limits, and in the proper place, and therefore imposed the same punishment that they would have imposed had the words "in the penitentiary" been in the instruction, we are clearly of the opinion that their omission was not prejudicial error.

Judgment affirmed.